# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2199
_____

Planet Sub Holdings, Inc., Individually and on behalf of all others similarly
situated; Planet Sub Enterprises, Inc., Individually and on behalf of all others
similarly situated; 1 Thirty-Nine, Inc., Individually and on behalf of all others
similarly situated; 2 Thirty-Nine, Inc., Individually and on behalf of all others
similarly situated

*Plaintiffs - Appellants*

v.

State Auto Property & Casualty Insurance Company, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 15, 2022
Filed: June 6, 2022

_____

Before SMITH, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

A group of restaurants sued their insurer, seeking coverage and damages for losses and expenses during the COVID-19 pandemic. The district court[1] granted the insurer's motion for judgment on the pleadings, dismissing the case. The restaurants appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

State Auto Property & Casualty Insurance Company, Inc. insured Planet Sub Holdings, Inc., Planet Sub Enterprises, Inc., 1 Thirty-Nine, Inc., and 2 Thirty-Nine, Inc.—a collection of corporations with 14 sandwich shops in Missouri, Kansas, and Oklahoma.

In 2020, because of the COVID-19 pandemic, public officials suspended all "non-essential businesses" where the sandwich shops were located. They were required to stop in-person dining. They submitted claims for losses, under an insurance policy covering "direct physical loss of or damage to" the covered property. State Auto denied the claims. The restaurants sued for themselves and a proposed class of similarly-situated policy-holders.

This court reviews de novo the grant of judgment on the pleadings, granting all reasonable inferences in favor of the non-moving party. *Levitt v. Merck & Co., Inc.*, 914 F.3d 1169, 1171 (8th Cir. 2019). To survive a motion to dismiss, "a complaint must contain sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The restaurants contend the district court erred in applying Kansas law rather than Kansas, Missouri, and Oklahoma law. This court reviews de novo the district court's choice-of-law determination. *St. Paul Fire & Marine Ins. Co. v. Bldg. Constr. Enters., Inc.*, 526 F.3d 1166, 1168 (8th Cir. 2008). State law controls the interpretation of the policy. *See J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

F.3d 337, 340 (8th Cir. 2007). Under Missouri's choice-of-law rules, which govern here, either § 188 or § 193 of the Restatement (Second) of Conflict of Laws applies to the interpretation of an insurance contract, absent a choice-of-law provision. *See Viacom, Inc. v. Transit Cas. Co.*, 138 S.W.3d 723, 724-25 (Mo. banc 2004) (per curiam).

The restaurants do not identify a material conflict between Kansas, Missouri, and Oklahoma law. Instead, they argue that at least under Missouri law, "physical loss of or damage to" has been interpreted more broadly, and would encompass the claims alleged here. This court need not determine which state's law applies if the outcome is the same under each. *See, e.g.*, *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007).

Kansas, Missouri, and Oklahoma share basic principles of contract interpretation. In all three states, courts read an insurance policy "as a whole, giving the words and terms their ordinary meaning, enforcing each part thereof." *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005). *Accord O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002) (construing an insurance policy, "a court should consider the instrument as a whole" and if the "insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense"); *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. banc 2009) (considering an insurance policy as a whole, if it is unambiguous, "the contract will be enforced as written"); *Farmland Indus., Inc. v. Republic Ins. Co.* 941 S.W.2d 505, 508 (Mo. banc 1997) (interpreting an insurance policy, courts give each term "its ordinary meaning").

As discussed in *Monday Restaurants*, "direct physical loss of or damage to property" is not triggered here. *Monday Restaurants v. Intrepid Ins. Co,* 32 F.4th 656, 658 (8th Cir. 2022). "[T]here must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction." *Oral Surgeons P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021). The restaurants' focus on distinctions between "loss of" and "damage

to" property is irrelevant, because both require "physicality," which was not plausibly alleged here. *See **Monday Restaurants***, 32 F.4th at 658; ***Pentair, Inc. v. American Guarantee & Liab. Ins. Co.***, 400 F.3d 613, 616 (8th Cir. 2005).

The cases in Missouri addressing physical contamination are not applicable here because the restaurants do not plausibly allege the actual presence of COVID-19 on their premises. In *Cincinnati Insurance Co. v. German St. Vincent Orphan Association, Inc.*, 54 S.W.3d 661, 663, 667 (Mo. App. 2001), the court held that asbestos dust generated during construction "caused damage to St. Vincent's property" because it had to be removed in order to restore the premises to an asbestos-free condition. *See also **Mehl v. Travelers Home & Marine Ins. Co.***, 2018 WL 11301983, at *1 (E.D. Mo. 2018) (finding coverage where home was infested with poisonous brown recluse spiders, rendering it uninhabitable, a "direct physical loss" under the policy). Here, the restaurants do not allege any virus that required removal from their properties. *Cf. **Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.***, 787 F.2d 349, 352 (8th Cir. 1986) (holding that insured grocery "suffered direct, concrete and immediate loss due to extraneous physical damage to the building").

The outcome is the same applying Kansas or Oklahoma law. A Kansas district court determined "physical loss or damage" in insurance contracts encompasses "physical alteration" to the insured's property. ***Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.***, 161 F. Supp. 3d 970, 977-78 (D. Kan. 2016). *See **Promotional Headwear Int'l v. Cincinnati Ins. Co.***, 504 F. Supp. 3d 1191, 1198 (D. Kan. 2020) (applying the "*Great Plains* interpretation that 'physical damage' requires actual, tangible damage" to the COVID-19 context). There was no physical alteration here. The Tenth Circuit affirmed a case applying Oklahoma law, determining the policy covering "direct physical loss of or damage to property" covered only losses "stemming from physical alteration or tangible dispossession of property." ***Goodwill Indus. of Cent. Okla., Inc. v. Philadelphia Indem. Ins. Co.***, 21 F.4th 704, 710-11 (10th Cir. 2021).

The restaurants argue in the alternative that they are entitled to coverage under the "Limited Extension for Food-Borne Illness." It expands coverage to include: "The suspension of your 'operations' at the described premises due to the order of a civil authority . . . resulting from the actual or alleged . . . . [e]xposure of the described premises to a contagious or infectious disease."

State Auto asserts that the restaurants did not properly allege this provision in their pleadings, so this court should not consider it. *See Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (a court "need not conjure up unpled allegations to save a complaint") (internal citations omitted). But the restaurants sought coverage under the "Business Income" and "Extra Expense" provisions, which incorporate this provision. The Food-Borne Illness extension clearly states that it modifies the Business Income and Extra Expense sections to include the additional coverage. Both the restaurants and State Auto attached the entire policy to their pleadings. This extension was sufficiently incorporated in the restaurants' pleadings.

The restaurants argue there is no direct causal language in the Food-Borne Illness extension tying the civil authority orders to the restaurants. But the plain, ordinary meaning of this extension does not support that view: "resulting from" requires a causal connection. The actual or alleged exposure must have been on the covered premises, which the restaurants do not plausibly allege. *Accord Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 458 (5th Cir. 2022) (assessing an identical provision, and affirming that civil authority orders must have a causal relationship with alleged or actual exposure of the covered premises to COVID-19 to trigger coverage).

The restaurants also claim coverage under the policy's "Civil Authority Extension":

> We will pay for the actual loss of Business Income . . . and necessary
> Extra Expense caused by action of civil authority that prohibits

access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The Civil Authority extension requires a direct physical loss or damage to property. *Accord* ***Brown Jug, Inc. v. Cincinnati Ins. Co.***, 27 F.4th 398, 404 (6th Cir. 2022). The restaurants do not allege such a loss or damage to any property.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____